United States District Court
Southern District of Texas

**ENTERED**

August 10, 2016

David J. Bradley, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| KENNETH DEARBORN, II,<br>(TDCJ-CID #1803244) | §<br>§<br>§ | |
| Petitioner, | §<br>§ | |
| vs. | §<br>§<br>§ | CIVIL ACTION H-15-2397<br>Consol. W/ CIVIL ACTION H-15-3107 |
| WILLIAM STEPHENS, Director,<br>Texas Department of Criminal Justice,<br>Correctional Institutions Division, | §<br>§<br>§<br>§ | |
| Respondent. | §<br>§ | |

### MEMORANDUM AND OPINION

The petitioner, Kenneth Dearborn, II, moved for habeas relief under 28 U.S.C. § 2254, challenging his 2012 Texas state-court convictions for aggravated assault and possessing a firearm after a felony conviction. Dearborn is concurrently serving 25-year and 10-year prison sentences.[1]

He alleges the following grounds for habeas relief:

1. his trial counsel was ineffective in failing "to request a charge" of self-defense or defense of a third person because Dearborn had no duty to retreat;

2. his trial counsel was ineffective in failing to make a bill of exception for the need of the eyewitness testimony of Danielle Jones-Mitchell, who is referred to in the state-court record as Danielle Jones and Danielle Mitchell;

3. the State engaged in selective prosecution by overlooking the illegal actions of the complainant; and

4. the State suppressed evidence of the complainant's family violence.

---

[1] The respondent's motion to consolidate Dearborn's subsequently filed petition in Civil Action No. H-15-3107 with this civil action is granted. (Docket Entry No. 13). The petition Dearborn filed in Civil Action No. H-15-3107 is essentially identical to the petition in Civil Action No. 15-2397.

(Docket Entry No. 1 at 6-7; Docket Entry No. 11 at 3-16).

Based on the motion and response, the state-court records, and the law, the court denies Dearborn's § 2254 motion, grants the respondent's motion for summary judgment, denies Dearborn's motion to defeat summary judgment, and enters final judgment dismissing the civil action. The reasons are explained below.

## I.    Background

Dearborn was charged with aggravated assault in Cause Number 1240364, and with being a felon in possession of a firearm based on the same incident in Cause Number 1240365. (CR-364 at 308-09; CR-365 at 286-87). After a bench trial in the 351st Judicial District Court in Harris County, Texas, the trial judge found him guilty and imposed concurrent 25- and 10-year prison terms. The Fourteenth Court of Appeals affirmed the convictions. *Dearborn v. State*, 420 S.W.3d 366 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Dearborn did not file a petition for discretionary review. He later filed state habeas applications challenging both convictions. The Texas Court of Criminal Appeals denied both applications without written order on the findings of the trial court. (SHCR-01 at 1-17, cover; SHCR-02 at 1-9, cover). Dearborn then filed this federal petition.

The Texas Fourteenth Court of Appeals summarized the facts established by the state-court trial record:

As the trial court observed, "[t]his is a tale of a boy, a girl, and a boy, which is always a bad combination." The complainant, Richard Mitchell, shared a house in Katy with his wife, Danielle Jones–Mitchell. Although the complainant was gone for extended stretches of time to work offshore, he paid the mortgage and utility bills for the house, and he had his own set of keys to the house.

2

On November 8, 2009, the complainant unexpectedly returned early from working offshore due to a storm in the Gulf of Mexico. The complainant called Jones–Mitchell, and she drove to Louisiana in their car to pick him up and drive him back to Katy. During the drive back, Jones–Mitchell informed the complainant that he could not return to their house that night. The complainant later discovered that while he had been working offshore, Jones–Mitchell had been cohabitating in their Katy house with [Dearborn]. The complainant admitted during [Dearborn]'s trial that he was very angry when he initially learned of this situation. To ensure that he returned to his house, the complainant eventually asked Jones–Mitchell to let him drive their car. They exchanged seats, and the complainant then drove the rest of the way to their house in Katy.

The complainant also admitted that he got even angrier when, during the drive, he answered a telephone call from [Dearborn] to Jones–Mitchell. According to the complainant, while they were still thirty minutes away from the house, he told [Dearborn] he had five minutes to get out. The complainant denied telling [Dearborn] anything other than he had five minutes to vacate the house. While admitting he was initially very angry, wanted to beat [Dearborn] up, and that he drove twice the speed limit at times on his way to his house, the complainant testified that Jones–Mitchell continued talking to him and he eventually calmed down and that upon arriving at his house, he "was going to let the dude call his ride and go."

According to the complainant, by the time they arrived at the house, he and his wife were not arguing, he had calmed down, and they walked together to the front door of the house. When Jones–Mitchell put her key in the front door lock, [Dearborn] fired a shotgun through the door, hitting the complainant. The complainant fled to the entrance of his neighbor's house, where he collapsed. Accompanied by Jones–Mitchell, the complainant was later taken by ambulance to the hospital, where he was treated and eventually released.

After his arrest, [Dearborn] gave a brief, voluntary statement to the police. According to that videotaped statement, Jones–Mitchell talked with [Dearborn] over the phone during the drive, and she told [Dearborn] that the complainant had hit her. [Dearborn] said he heard arguing over the phone and heard complainant ask Jones–Mitchell where a shotgun was. [Dearborn] also told the police that the complainant answered one of his calls to Jones–Mitchell and told [Dearborn] he had better be gone when he reached the house. [Dearborn] told the police he wanted to leave the house but had no transportation. [Dearborn] said he was scared and moved a shotgun close to the front door. [Dearborn] said he heard a car pull up to the house and then a light tapping sound at the front door like there was a key at the door. Scared, [Dearborn] picked up the shotgun in both hands and it then accidently fired through the front door. Immediately after firing the shotgun through the front door, [Dearborn] placed the shotgun and spent shell casings on a table in the living room,

washed his hands, and then went outside to check on the complainant. [Dearborn] told Jones–Mitchell and the wounded complainant that he accidentally fired the shotgun. [Dearborn] later told the deputy sheriff who responded to the scene that he accidentally shot the complainant.

At his bench trial, [Dearborn] did not testify, but his videotaped statement to police was introduced into evidence as an exhibit. Jones–Mitchell also did not testify. Only three witnesses testified during [Dearborn]'s trial: the complainant; the deputy sheriff who responded to the shooting; and a firearms examiner from the Harris County Sheriff's Office. The firearms examiner testified that it was unlikely the shotgun could fire accidentally. Instead, she testified the trigger is "going to have to be directly pulled, not just a slight tap is going to cause it to go off."

At the conclusion of the guilt-innocence phase of the bench trial, the court found [Dearborn] guilty of both charges. Then, at the conclusion of the sentencing phase and before imposing [Dearborn]'s punishment, the trial court stated:

> Now, I don't know what happened in the [prior felony conviction] but I do know in this situation that the choice you made was—rather than leaving and completely [defusing] the situation, you made the choice to stay, you made the choice to arm yourself. . . .
>
> I can understand you being afraid in that situation. But, again, that fear could have been productive. You could have left and not been in that situation.

The trial court then sentenced [Dearborn] to 25 years in prison for the aggravated assault and 10 years in prison for possessing the firearm.

*Dearborn*, 420 S.W.3d at 369-71.

Dearborn's grounds for relief and the respondent's arguments are analyzed below based on the record and under the legal standards that apply.

## II.    The Applicable Legal Standards

### A.    AEDPA

Under 28 U.S.C. § 2254(d), a federal court may not issue a habeas writ for a defendant convicted under a state judgment unless the state court's decision "'was contrary to' federal law then

clearly established in the holdings of" the Supreme Court, or "'involved an unreasonable application of'" clearly established Supreme Court precedent, or "'was based on an unreasonable determination of the facts' in light of the record before the state court." *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) (quoting (*Terry*) *Williams v. Taylor*, 529 U.S. 362, 412 (2000)); 28 U.S.C. § 2254(d). A state-court decision is contrary to established federal law if the state court "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or confronts facts that are "materially indistinguishable" from a relevant Supreme Court precedent, yet reaches an opposite result. *Williams*, 529 U.S. at 405-06. A state court unreasonably applies Supreme Court precedent if the state court correctly identifies the governing precedent but unreasonably applies it to the particular case. *Id.* at 407-09. To determine if the state court made an unreasonable application, a federal court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Richter*, 1321 S. Ct. at 786. Indeed, this is the "only question that matters under § 2254(d)(1)." *Id.*

"[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'" about whether the state court correctly decided the constitutional issue. *See Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Woodford v. Visciotti*, 537 U.S. 19, 27 (2002) (federal habeas relief is merited only when the state-court decision is both incorrect and objectively unreasonable, "whether or not [this Court] would reach the same conclusion"). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 131 S. Ct. at 786. If the Supreme Court has not "broken sufficient legal ground to establish [a] . . . constitutional

principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar." *Williams*, 529 U.S. at 381.

Under AEDPA deference, a federal court must presume that the state court's factual findings are correct unless the petitioner rebuts the presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001).

**B.      Ineffective Assistance of Counsel**

Showing ineffective assistance of counsel requires a preponderance of the evidence that trial counsel's performance was deficient because it fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); Clark, 227 F.3d at 282. The defendant must show that his counsel made "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A federal habeas court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002) (citing *Strickland*, 466 U.S. at 689). The court "must strongly presume that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). This is a "highly deferential" standard intended to eliminate the "distorting effects of hindsight." *Strickland*, 466 U.S. at 689.

*Strickland* also requires a defendant to show prejudice from counsel's deficient performance. *Galvan*, 293 F.3d at 764. The defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Strickland*, 466 U.S. at 694. "Even a deficient performance does not result in prejudice unless that

conduct so undermined the proper functioning of the adversary process that the trial cannot be relied

upon as having produced a just result." *Knox v. Johnson*, 224 F.3d 470, 479 (5th Cir. 2000) (quoting

*Strickland*, 466 U.S. at 687).   Alleging prejudice does not alone show prejudice.   Failing to show

either  deficient  performance  or  prejudice  makes  it  unnecessary  to  examine  the  other  prong.

*Strickland*, 466 U.S. at 697.   Both are required.

     **C.**     **Summary Judgment**

     Summary judgment rules apply to federal habeas proceedings, but only to the extent that they

do not conflict with the habeas rules.   *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002).

Because  state-court  fact  findings  are  presumed  correct,  under  § 2254(e)(1),  this  presumption

overrides the rule that factual disputes are viewed in the light most favorable to the nonmoving party.

*Id.*

**III.**    **Analysis**

     **A.**     **The Claim that Counsel Was Ineffective for Failing to Request a Charge on
Self-Defense or Defense of a Third Party (Claim 1)**

     Dearborn refers to a jury charge, but this was a bench trial.   Liberally construed, he argues

that counsel was ineffective for failing to argue the defense of a third party or self-defense.

     The record shows that trial counsel did raise the justification of necessity as a defense to the

unlawful possession of a weapon charge.   Trial counsel contended that it was necessary for Dearborn

to possess a firearm to protect himself.   (3 RR at 74-75); *see* TEX. PEN. CODE § 9.22 (conduct is

justified if the actor reasonably believes the conduct is immediately necessary to avoid imminent

harm).   Counsel also raised accident as a defense to the aggravated assault charge.   (3 RR at 74-75).

Dearborn's trial counsel testified as to his trial strategy.  He stated:

> . . . [Dearborn's] position is, and has always been, that he knew the shotgun was there because [Jones-Mitchell] told him.  He got the shotgun because he felt he was under threat by the statement that the complainant admits to making:  You've got five minutes to leave.  He says he moved the gun over there, as you heard him in the statement he gave the police, without any opportunity to talk to a lawyer.
>
> He said that when they drove up, he got really scared.  This is what he said in his record statement that you've heard.  He went over to get the gun, he got the gun.  When he heard the lock turn, he fired it.  He said he didn't fire it intentionally.  He just—as he was moving the gun, it went off.  His defense is necessity for possessing the gun, that he felt under threat and needed to defend himself.  His defense on the shooting, actually, the aggravated assault, is accident.
>
> And I think that I'm more comfortable with the court only hearing the story that he gave the police without any opportunity to be talked to a lawyer.  I could probably, as the court well knows, educate him pretty well in the law of self-defense and get him to say the key things to maybe get a charge before a jury, if I wanted to do that sort of thing, but I'm real happy with him telling the story the way he told it and leaving it with the court, whatever the court's decision might be.

(3 RR at 74-75).

In response to Dearborn's state habeas application challenging his aggravated assault conviction and in consideration of the record, the state habeas court determined that Dearborn failed to show that his trial counsel was ineffective.  The state court made the following specific fact findings:

3.  [Dearborn] gave a voluntary, record statement to the police the night of the shooting. ([3 RR 14-15]).

4.  Trial counsel pursued a defense of accident at trial, pursuant to [Dearborn]'s recorded statement to the police that the firearm went off accidently and was not intentionally fired.  ([3 RR at 74-75]).

5.  In light of [Dearborn]'s recorded statement to the police that the firearm discharged accidently and was not intentionally fired, trial counsel's strategy of not objecting to the State's introduction of [Dearborn]'s statement at trial, was a reasonable strategy.

8

6.   In light of [Dearborn]'s recorded statement to the police, trial counsel's decision to avoid the introduction of additional or divergent testimony at trial, from that of an accidental shooting, was reasonable strategy. ([3 RR 74-75]).

7.   [Dearborn] fails to establish that trial counsel's strategic tactic of pursuing a defense of accident as promulgated by [Dearborn] himself, fell below the objective standard of reasonableness, and that but for trial counsel's alleged deficiencies, the result of the proceeding would have been different.

(SHCR-01 at 76).  Based on these findings, the state habeas court concluded that Dearborn failed to "show that trial counsel's conduct fell below an objective standard of reasonableness and that, but for trial counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different."  (Conclusion of Law No. 2).  The state habeas court determined that, given Dearborn's statements in the recorded interview, trial counsel's decision to argue necessity to possess a gun for protection was reasoned trial strategy to defend against the weapons charge.  (Findings of Facts 6-8; Conclusion of Law No. 2).  The finding is supported by the fact that Dearborn continuously stated that he wanted to leave the scene and wanted nothing to do with the situation between Jones-Mitchell and the victim.  To any extent Dearborn's first claim challenges his firearm conviction, he cannot show that the state court's decision to deny his claim was unreasonable.

The record also supports the finding that trial counsel's decision to pursue a defense of accident, and not raise the defense of a third party or self-defense in response to the aggravated assault charge was reasoned trial strategy.  Shortly after the shooting, Dearborn claimed that he had accidentally shot the victim.  (3 RR at 12 (detective's testimony that Dearborn exclaimed "I shot him.  It was an accident")).  In a later police interview, Dearborn again stated that the weapon had accidently discharged.  He explained that he had grabbed the gun and it just "went off" and fired

9

through the door. (*See* State's Exhibit 17). During this recorded interview, Dearborn gave no indication that he grabbed the gun to use it to protect Jones-Mitchell. He specifically stated that he wanted to leave, but he had no ride. He stated that he had put the gun by the door so that when the victim came to the house, Dearborn could say, "look man, let me leave." (*Id.*). Dearborn explained that he had told Jones-Mitchell on the phone that he wanted nothing to do with her situation with the victim and that he had tried to call the victim on the way to the house to explain that he did not want to be involved. (*Id.*). The state habeas court found that if trial counsel had argued that Dearborn fired the gun with the intention of protecting Jones-Mitchell, that would have undermined the claim that the gun accidently discharged and would have contradicted his statements to police in the recorded interview. (SHCR-01 at 76 (Finding of Fact No. 6).

The record supports the state-court finding that trial counsel's strategy was neither deficient nor prejudicial. Not only did Dearborn repeatedly explain that the gun accidentally fired, there was no basis to find an immediate necessity to fire the gun to protect either himself or a third person. Texas law allows a person to use force against another only when, and to the degree, it is reasonable to believe that the force is immediately necessary to protect against the other's use or attempted use of unlawful force. TEX. PENAL CODE ANN. § 9.31(a) (West 2012). A person is justified in using force or deadly force against another to protect a third person if: (1) "under the circumstances as the actor reasonably believes them to be, the actor would be justified under section 9.31 or 9.32 in using force or deadly force to protect himself against the unlawful force or unlawful deadly force he reasonably believes to be threatening the third person he seeks to protect," and (2) "the actor reasonably believes that his intervention is immediately necessary to protect the third person." *Id.* § 9.33.

The victim testified that he was initially angry and had told Dearborn that he had five minutes to leave. But the victim also testified that he had calmed down by the time he reached the house. Dearborn stated in the police interview that he could not remember if anything was said when the victim tried to enter the house. There is no evidence supporting an inference that Dearborn reasonably believed that shooting the victim through a door was "immediately necessary" to protect himself or Jones-Mitchell. Dearborn gave no indication in the interview that he believed Jones-Mitchell had been kidnapped or that it was necessary to try to prevent a kidnapping from occurring. Instead, Dearborn repeatedly stated that he wanted to leave, that he wanted nothing to do with the situation between Jones-Mitchell and the victim, and that the gun had accidentally discharged. (State's Exhibit 17). The Texas Court of Criminal Appeals denied relief on Dearborn's clams without written order, adopting the trial court findings. This was an adjudication on the merits. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999). The factual determinations are presumed correct, and this finding has not been rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e); *Neal v. Puckett*, 239 F.3d 683, 696 (5th Cir. 2001) ("[t]he only question for a federal habeas court is whether the state court's determination is 'at least minimally consistent with the facts and circumstances of the case'"). The record does not demonstrate that trial counsel's performance was deficient, that Dearborn was prejudiced, or that the state court unreasonably denied this claim. *Strickland*, 466 U.S. at 689. Summary judgment is granted dismissing this claim.

## B.   The Claim That Trial Counsel Was Ineffective for Failing to Make a Bill of Exception for the Testimony of Danielle Jones-Mitchell (Claim 2)

Dearborn contends that Jones-Mitchell's testimony would have been important to his case because her version of events "conflicts with [the complainant's testimony] in significant areas

11

which place petitioner's culpability in an Aggravated Assault in a different light." (Docket Entry No. 11 at 9). He contends that trial counsel should have filed a bill of exception to show her unavailability as a witness and that he should have had Jones-Mitchell testify at trial.

Texas law requires a party to file a formal bill of exception to assert on appeal "about a matter that would not otherwise appear in the record." Tex. R. App. P. 33.2; *see also Landers v. State*, 402 S.W.3d 252, 256 (Tex. Crim. App. 2013) (Cochran, J., dissenting). Dearborn preserved Mitchell's affidavit for appeal by filing a motion for new trial and attaching the affidavit as an exhibit. *Warren v. State*, 693 S.W. 2d 414, 416 (Tex. Crim. App. 1985) (error can be preserved by several means, including a motion for new trial or bill of exception). Dearborn submitted the affidavit as evidence on state collateral review. (SHCR-01 at 21-22). In Jones-Mitchell's affidavit, she discusses her recollection of events related to the case. (SHCR-01 at 21-22; CR-364 at 346-48; CR-365 at 318-20). Dearborn asserted that trial counsel had that affidavit in July 2011, a year before the trial began.

At trial, defense counsel explained,

I've talked to [Jones-Mitchell] myself. It's been a year since I've been able to actually talk to her, but I did talk to her twice and there really isn't anything that she's told me that would be helpful, I think, to our defense that isn't already in the record. . . .

[W]e had a calculated decision to make last Friday, when the case was called for trial, about whether to go forward without her testimony or not. It is my understanding that she has told the State that she moved to Alabama. I know that the court gave the State over the weekend to try to find her and I know they've tried. And I'm told they went to her grandmother's house, they talked to some people, everybody verified that she has actually moved to Alabama and has no intention of coming back. I've had information from my—the defendant's family that she has made numerous statements that she has no intention of coming back and testifying. On Friday, the defendant informed me that he really wanted to go to trial. He wanted to recess to go try to find her. I explained to him we could get her served out of state and have

their—our sheriff with their sheriff, a way to make her come back here. I think some of the things that he was most concerned about trying to prove up have—I think all of them have come into evidence with the complainant himself. So, I actually—as a matter of trial strategy, I don't think I would even call her anyway at this point. So, I'm happy to have proceeded without her and I know the defendant is, too. So, that's my explanation for the record if anybody ever cares to think about why we didn't have her here to testify.

(3 RR at 71-72).

The state habeas court entered the following findings:

8.    [Dearborn] fails to show that witness Danielle [Jones-] Mitchell was available to testify at trial, or that her testimony would have been of some benefit to [Dearborn]'s defense.

9.    Trial counsel had previously spoken with witness Danielle [Jones-] Mitchell in preparation for trial.

10.   [Dearborn] expressed his desire to proceed with trial to trial counsel, despite witness Danielle [Jones-] Mitchell's absence and trial counsel's explanation to [Dearborn] that additional measures could be taken to attempt to locate witness Danielle [Jones-] Mitchell and secure her presence at trial.

11.   In light of trial counsel's pretrial conversations with witness Danielle [Jones-] Mitchell and knowing [Dearborn]'s desire to proceed to trial regardless of [Jones-] Mitchell's availability, trial counsel's failure to object to her unavailability and failure to compel her presence and testimony was reasonable strategy.

12.   [Dearborn] fails to show what other steps or actions trial counsel should have taken in response to securing the presence of and presenting the testimony of witness Danielle [Jones-] Mitchell at trial.

13.   [Dearborn] fails to establish that trial counsel's failure to object to witness Danielle [Jones-] Mitchell's absence and failure to present her testimony at trial, fell below the objective standard of reasonableness, and that but for trial counsel's alleged deficiencies, the result of the proceeding would have been different.

(SHCR-01 at 76-77). Based on these findings, the state habeas trial court concluded that Dearborn

13

had not shown "that trial counsel should have presented a particular witness at trial, by failing to show that witness had been available to testify and that her testimony would have benefitted his defense." (SHCR-01 at 79 (Conclusion of Law No. 6)).

To demonstrate prejudice from a failure to call a witness, the petitioner must show that the witness would have testified at trial and that the testimony would have been favorable. *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) (citing *Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981)); *Gomez v. McKaskle*, 734 F.2d 1107, 1109-10 (5th Cir. 1984). A petitioner must "name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).

The record supports the finding that Dearborn failed to show that Danielle Jones-Mitchell would have testified at his trial. (SHCR-01 at 76-77, 79). The affidavit does not show that Jones-Mitchell was available or willing to testify. (*Id.*). To the contrary, Dearborn argued for a new trial because Jones-Mitchell had "intentionally concealed her location from Dearborn's defense team, making it impossible to quickly locate her by intentional means. The Public Defender's Office investigation staff believes that Ms. [Jones-Mitchell] has fled the state in an attempt to further avoid being summoned by the court." (CR-364 at 341; CR-365 at 313). This argument is inconsistent with the claim that Jones-Mitchell was ready to testify favorably to Dearborn and would have done so. The record indicates that Jones-Mitchell had moved to Alabama and was not cooperating with the prosecution or the defense. The state habeas court reasonably concluded that Dearborn had not shown "what other steps or actions trial counsel should have taken in response to securing the presence of and presenting the testimony of witness Danielle [Jones-] Mitchell at trial." (SHCR-01

14

at 77 (Finding of Fact No. 12)).

Dearborn also failed to show that Jones-Mitchell's testimony would have benefitted his defense. *See Strickland*, 466 U.S. at 689, 694. He contended that her testimony would "place petitioner's culpability in an Aggravated Assault in a different light." (Docket Entry No. 11 at 9). But trial counsel stated that he had communicated with Jones-Mitchell and learned that she could provide nothing helpful to Dearborn's defense. (3 RR at 71-72). Jones-Mitchell's affidavit does not state that she conveyed information about the victim's behavior to Dearborn. (SHCR-01 at 21-22; CR-364 at 346-48; CR-365 at 318-20). Dearborn told police that Jones-Mitchell had told him that the victim had hit her, but Dearborn did not state that he believed the victim had kidnapped her or that this fear explained why Dearborn had the gun and fired it. Dearborn's trial counsel explained that after talking to Jones-Mitchell, he decided to argue that the shooting was an accident, not an intentional act in defense of a third party. (3 RR at 71-72); *see Wilkerson*, 950 F.2d at 1065. He also explained that as a matter of trial strategy, he would not have called Jones-Mitchell as a witness even if she had been available and willing to come.

The record does not support a defense-of-third-party argument. As the state habeas court found, it was reasonable trial strategy to avoid evidence that undercut the claim of an accidental shooting. Dearborn failed to demonstrate that Jones-Mitchell's testimony would have helped his defense. He also failed to show that trial counsel's decision not to call Jones-Mitchell, even assuming availability, was not reasoned trial strategy or that it caused Dearborn prejudice. *Strickland*, 466 U.S. at 689, 694.

The state habeas court made the same findings and conclusions with respect to Jones-Mitchell's testimony in response to Dearborn's state habeas application challenging his conviction for felon in possession of firearm.  The Texas Court of Criminal Appeals denied this application, adopting the findings of the trial court.  Dearborn also failed to show that this determination was unreasonable.

Summary judgment is granted as to Claim 2, and it is dismissed with prejudice.

**IV.     The Claims of Selective Prosecution and Suppression of Evidence. (Claims 3 and 4).**

Dearborn contends that the state's failure to present evidence at trial of the victim's acts before the assault amount to "selective prosecution."  (Docket Entry No. 1 at 7).  Whether the state prosecuted the victim for allegedly illegal acts he had committed before the incident, or failed to present evidence of those acts at Dearborn's trial, does not amount to selective prosecution and is neither actionable nor relevant to determining whether Dearborn's conviction was unconstitutional.

Dearborn claimed that the state suppressed evidence of the events that occurred in the car, but he does not specify what evidence the prosecution wrongly suppressed.  He appears to allege that the information suppressed was from Jones-Mitchell's affidavit, but Dearborn contends it was faxed to his attorney a year before trial.  The complainant testified at trial and Dearborn's counsel cross-examined him.  (3 RR at 36-69).

The state habeas court made the findings:

14.     [Dearborn] fails to allege and prove sufficient facts proving why and how the State's decision of whether or not to pursue criminal charges against the complainant for his behavior against witness Danielle Mitchell on the night of the primary offense, harmed [Dearborn]'s conviction and confinement in the instant case.

15. Trial counsel had the opportunity to cross-examine and elicit relevant, bad character evidence of the complainant at trial, independent of any testimony presented by the State during direct examination, and did so.

16. Issues concerning the character and credibility of the complainant are within the purview of the finder of fact, and were resolved in favor of the judgment.

(SHCR-01 at 77-78; SHCR-02 at 70-71).

The Texas Court of Criminal Appeals denied relief without written order, adopting the trial court findings. (SHCR-01 at cover; SHCR-02 at cover; *see Singleton*, 178 F.3d at 384). The record does not show that the state habeas court's determination was unreasonable. Summary judgment is granted as to Claims 3 and 4, and they are dismissed.

## V.   Conclusion

Dearborn's habeas application is denied. The respondent's motion for summary judgment is granted. Final judgment is separately entered. No certificate of appealability is entered.

A certificate of appealability is required before Dearborn may appeal. *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir.) (§ 2254 and § 2255 require a certificate of appealability), *cert. denied sub nom. Monroe v. Johnson*, 522 U.S. 1003 (1997). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the defendant makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2). This requires the defendant to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke,* 542 U.S. 274, 282 (2004) (quoting *Slack v.*

*McDaniel,* 529 U.S. 473, 484 (2000)).  The defendant must show "that reasonable jurists could debate whether (or, for that matter, agree that) the [§ 2255 Motion] should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El,* 537 U.S. at 336.

A district court may deny a certificate of appealability on its own, without requiring further briefing or argument. *See Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000).  After carefully considering the record, the court concludes that jurists of reason would conclude without debate that Dearborn has not stated a valid claim for relief under § 2254.  A certificate of appealability will not issue.

Dearborn is not entitled to relief under 28 U.S.C. § 2254.  His pending § 2254 petition for writ of habeas corpus is denied, (Docket Entry No. 1 in Civil Action No. 15-cv-03107; Docket Entry No. 1 in Civil Action No. 15-cv-02397), and the respondent's motion for summary judgment, (Docket Entry No. 19 in Civil Action No.15-cv-2397), is granted.  Dearborn's motion to defeat the summary judgment, (Docket Entry No. 26), is denied.  No certificate of appealability will issue. This civil action is dismissed.

SIGNED on August 9, 2016, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

18